**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

KEENAN RANDALL STACKS,

      Petitioner,

v.                                                                Case No. 3:19-cv-3541-LC-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner Keenan Randall Stacks has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered (Doc. 11), providing relevant portions of the state court record. (Doc. 14). Stacks has not replied.[1] The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that Stacks is not entitled to habeas relief.[2]

---

[1] Stacks's reply deadline expired on March 25, 2020. (*See* Doc. 12).

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND AND PROCEDURAL HISTORY[3]

On June 26, 2013, Stacks and his then-girlfriend Chloe Johnson consumed what she described as liquid Xanax. Later, Stacks mentioned that he wanted to rob someone for "molly," a controlled substance. Johnson identified potential victims and contacted them via Facebook, indicating an interest in buying the drug. Terrence Robinson, one of the victims in this case, responded by quoting Johnson a price—$700—which Johnson interpreted as his price for one ounce of molly. Robinson then sent Johnson a picture of what appeared to be 29 grams of molly on a scale.

Stacks wanted to include his friend, Benjamin Rumlin ("Scooter"), in the robbery. Stacks and Johnson drove to Rumlin's house, and the three of them discussed robbing Robinson. The plan was that Johnson would drive the car; Stacks and Rumlin would run up on Robinson and rob him; and Stacks, Rumlin, and Johnson would split the molly. The trio planned to commit the robbery that night, but Stacks fell asleep in the car. Johnson drove Rumlin home and then returned to her own home with Stacks.

---

[3] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 14-8, Ex. H – Doc. 14-10, Ex. J (Trial Tr.)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

Stacks and Johnson went inside Johnson's house for the night. Stacks brought his backpack. Before Stacks and Johnson went to sleep, Stacks opened his backpack, pulled out a gun, and placed it under his pillow.

On June 27, 2013, Stacks and Johnson awoke around 10:00 a.m. Johnson arranged a trip to the beach with her friend Jesse Morgan. Stacks put the gun back into his backpack, and he and Johnson drove to Morgan's house in Johnson's mother's car. Stacks asked Johnson if they were going to have any problems with the robbery. Johnson responded "no" because Robinson was "soft" and would not fight back. Johnson had known Robinson since the sixth grade. Johnson, Stacks, and Morgan continued to the beach.

After about 30 minutes at the beach, the three drove to Rumlin's house. On the way there, Stacks told Johnson to contact Robinson and arrange to meet him. Johnson arranged to meet Robinson later that day.

At Rumlin's house, Johnson, Stacks, and Rumlin confirmed the robbery plan. Morgan was present and overheard the conversation, but was not involved in the discussion or the planned robbery. Morgan overheard Stacks discuss a plan to meet "Terrence" to get molly and rob him. Morgan saw Stacks take the gun out of his backpack with a t-shirt draped over it. Morgan did not take drugs and did not want

to be involved. Morgan asked to go home, and Johnson drove Morgan home with Stacks and Rumlin in the car.

Johnson, Stacks, and Rumlin prepared to meet Robinson. The meeting was arranged for the Spanish Villa Apartments. Johnson received a phone call from her mother to return home with the car. Johnson dropped off Stacks and Rumlin at a bar near the Spanish Villa Apartments so they could meet Robinson and complete the robbery. Johnson went home and later learned—from Stacks—that he shot Robinson and the man with him.

John Selfridge, the second victim in this case, was Robinson's friend. On June 27, 2013, around 3:00 p.m., Selfridge, Robinson, and another friend were at the Santa Rosa Mall. Robinson received a call from Johnson. After the call, Selfridge and Robinson left to meet Johnson at the Spanish Villa Apartments. Selfridge was driving, and Robinson was in the front passenger's seat.

When Selfridge and Robinson arrived at the Spanish Villa Apartments, they did not see Johnson. Robinson directed Selfridge to park in a back parking lot. Robinson then revealed to Selfridge that he was there to do a drug deal, but that he didn't have any drugs—only a bag of salt crystals he intended to sell as molly. While Selfridge and Robinson were talking in the car, Stacks and Rumlin ran up to the car—Stacks to the driver's side and Rumlin to the passenger's side.

Stacks and Rumlin tried to open the car doors, but they were locked. Selfridge put the car in gear to drive away. Stacks stepped back from the car, pulled out his gun, and began firing into the front seat at Selfridge and Robinson. Selfridge dropped down and placed his arm over his chest to protect his chest. Selfridge drove off as Stacks continued shooting into the back window of the car. Selfridge counted nine gunshots.

One of the bullets Stacks fired hit Selfridge in the left arm and entered his chest. Four of the bullets Stacks fired hit Robinson—one in the back of the head (which killed Robinson), two in the back, and one in the arm. Selfridge drove toward a soccer field hoping it would provide a landing area for a rescue helicopter to take Robinson to a hospital. As he drove, with Robinson's head in his lap, he intentionally cut off another car and pulled over, hoping the other driver would pull over and help. The woman in the other car pulled over and called 911.

EMS arrived, placed Selfridge in an ambulance, and arranged for him to be transported to a hospital via helicopter. Robinson was pronounced dead at the scene. While in the ambulance, Selfridge told police that at the time he and Robinson were shot, they were supposed to meet a girl named Chloe with whom they had been communicating by phone. Police recovered Robinson's cell phone and traced recent

call activity to Johnson. Based on information provided by Morgan and Johnson, the police considered Stacks and Rumlin to be suspects.

Charles Ellery was cleaning the outside of a building near the Spanish Villa Apartments at the time of the shooting. Ellery witnessed the shooting. After the shooting, Ellery saw Stacks and Rumlin run in his direction, stop between two buildings, and remove t-shirts that were wrapped around their heads. Ellery saw Stacks's and Rumlin's faces and made eye contact with Stacks. Ellery identified Stacks as the shooter and Rumlin as his accomplice from photographic lineups. Ellery also identified Stacks in court as the shooter.

Johnson ultimately pled guilty to the First-Degree Murder of Robinson and the Attempted First-Degree Felony Murder of Selfridge.

In Okaloosa County Circuit Court Case No. 2013-CF-1485, Stacks was indicted for First Degree Premeditated and/or Felony Murder (Count 1) and Attempted First Degree Felony Murder (Count 2). (Doc. 14-1, Ex. A at 7-8).[4] Stacks was tried on October 27-29, 2014. (Doc. 14-8, Ex. H – Doc. 14-10, Ex. J (Trial Tr.)). Johnson, Morgan, Ellery, and others testified against Stacks at trial.

---

[4] Citations to the state court record are to the electronically filed exhibits attached to the State's Notice of Filing Exhibits. (Doc. 14). The citation refers to the attachment number followed by the lettered exhibit. If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

The jury found Stacks guilty of both counts as charged. (Doc. 14-7, Ex. G at 1040-41 (Verdict)). The jury made the following specific findings concerning Stacks's murder of Robinson: (1) Stacks carried, displayed, used, or threatened to use a firearm; (2) Stacks actually possessed a firearm; (3) Stacks discharged a firearm; and (4) Stacks discharged a firearm causing death. (*Id*. at 1040). Concerning the attempted murder of Selfridge, the jury made the specific finding that Stacks carried, displayed, used, or threatened to use a firearm. (*Id*. at 1041).

The trial court adjudicated Stacks guilty of both counts and sentenced him to imprisonment for life without the possibility for parole. (Ex. G at 1042-51 (J. & Sentence)).[5] The Florida First District Court of Appeal ("First DCA") affirmed on October 27, 2015, *per curiam* and without written opinion. *Stacks v. State*, 177 So. 3d 255 (Fla. 1st DCA 2015) (Table) (copy at Doc. 14-14, Ex. N).

On September 21, 2016, Stacks filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (Doc. 14-15, Ex. O (Initial Mot.); Doc. 14-16, Ex. Q at 11-112 (Am. Mot.)). The state circuit court denied relief based on the record and after reviewing a portion of a video recording of Stacks's trial. (Doc. 14-16, Ex. Q at 195-96 (Order Directing Clerk of

---

[5] Stacks was sentenced to imprisonment for life for the murder and a consecutive term of 75 years of imprisonment for the attempted felony murder.

Ct. to File CD Recording); *Id.* at 198-414 (Order Den. Postconviction Relief)). The First DCA affirmed on July 23, 2019, in a written opinion. *Stacks v. State*, 275 So. 3d 1257 (Fla. 1st DCA 2019) (per curiam) (copy at Doc. 14-18, Ex. S). The mandate issued August 20, 2019. (Doc. 14-19, Ex. T).

Stacks filed his federal habeas petition on September 16, 2019. (Doc. 1). The petition raises four claims of ineffective assistance of trial counsel. (*Id.*). The State asserts that all of Stacks's claims fail on the merits. (Doc. 11).

## II. RELEVANT LEGAL PRINCIPLES

### A. Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

---

[6] Unless otherwise noted, references to the Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless

the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529

U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See*

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

**B.    Federal Law Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Trial counsel is "strongly

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). "Because of this burden, when the evidence is unclear . . ., [courts] presume counsel performed reasonably and exercised reasonable professional judgment." *Blankenship v. Hall*, 542 F.3d 1253, 1274 (11th Cir. 2008) (citations omitted).

   *Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.    DISCUSSION

**Ground One**        **"Jurors Ms. Cato and Ms. Thomas Were Biased Jurors and Counsel Violated Due Process Rights by Not Excluding Them." (Doc. 1 at 5).**

Stacks alleges that Juror Cato was biased because she was once the victim of a robbery and, when asked if she could be impartial, answered that she did not know

if she could separate her feelings as a victim. (Doc. 1 at 5). Stacks alleges that Juror

Thomas was biased because she worked at the location where the helicopter landed

to pick up Selfridge, and Thomas stated that she discussed the case with her

colleagues at work and her children. (*Id*.). Stacks claims that trial counsel was

ineffective for failing to exclude Cato and Thomas. (*Id*.).

The parties agree that Stacks exhausted this ineffective assistance claim by

presenting it to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 6; Doc. 11

at 23). The State asserts that Stacks is not entitled to habeas relief because he fails

to satisfy § 2254(d)'s demanding standard. (*Id*. at 23-31).

### A.    State Court's Decision

Stacks raised this claim as "Claim 5" of his amended Rule 3.850 motion. (Doc.

14-16, Ex. Q at 20-25). The state circuit court identified *Strickland* as the controlling

legal standard, (Doc. 14-16, Ex. Q at 199-200), and denied relief for these reasons:

### Claim 5: Ineffective Assistance Regarding Jurors Virginia Cato and Amy Thomas

*Juror Virginia Cato*

Defendant argues that counsel rendered ineffective assistance by
failing to exclude Ms. Cato as a juror for bias. Specifically, Defendant
states that counsel should have excluded Ms. Cato as a juror because
after she stated that she had been a victim of a robbery, and after she
was asked whether she could be impartial, she stated, "It's hard to say
because I was the victim. I don't know if I can separate my feelings as
a victim. I'm being honest." Defendant alleges that although he

"ratified" the jury selections, he did so because "of a lack of knowledge as to what the process of selection encompasses" and because he "was totally under the sway of defense counsel" and "was told to simply answer 'yes, sir.'" Defendant states that had he been properly advised about "juror biasness," he would not have agreed to select Ms. Cato as a juror and "the outcome of the trial would have been favorably different for Defendant." Defendant alleges that Ms. Cato was "inherently bias[ed]."

A defendant who "personally affirms his acceptance of the jury panel will not be heard to complain in a postconviction motion that his counsel was ineffective for allowing a biased juror to serve on his jury." Kelley v. State, 109 So. 3d 811, 813 (Fla. 1st DCA 2013). "In the postconviction context, we have held that a defendant must establish that an actually biased juror sat on the jury to succeed on a claim of ineffective assistance of counsel for failing to make a cause challenge. This is a higher standard than on direct appeal—mere doubt about a juror's impartiality is insufficient under this standard." Hall v. State, 212 So. 3d 1001, 1015-16 (Fla. 2017), reh'g denied, SC15-1662, 2017 WL 1150799 (Fla. Mar. 28, 2017) (internal citation omitted). "Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007).

Defendant was aware of the alleged bias of Ms. Cato when he affirmed that he was satisfied with the composition of the jury. Although Defendant appears to allege that he was not properly advised about "juror biasness," during jury selection, the Court stated:

> This part of the case is known as voir dire or voir dire examination. Voir dire examination is for the purpose of determining if your decision in this case would in any way be influenced by opinion which you now hold or by some personal experience or special knowledge which you may have concerning the subject matter to be tried. The object is to obtain a jury who will impartially try the issues of this

case upon the evidence presented in this courtroom without being influenced by any other factors. . . .

Each side has a certain number of peremptory challenges by which I mean that each side can challenge you and ask that you be excused without giving a reason therefore. In addition, each side has challenges for cause, by which I mean that each side can ask that you be excused for a specific reason set out in the law or rules of court.

Further, Defendant affirmed that he understood that he had "some strikes" that were available and that he was waiving the use of "those strikes" if the jury remained the same. Accordingly, Defendant "cannot use the postconviction process to go behind" his representation to the Court that he was satisfied with the composition of his jury. See Kelley v. State, 109 So. 3d 811, 813 (Fla. 1st DCA 2013).

Even if Defendant were permitted to raise this claim, he has not shown that Ms. Cato was *actually biased*. During jury selection, Ms. Cato affirmed that she had been a victim of a crime when her "business was robbed" while she was not there. Although Ms. Cato stated that "[i]t's hard to say" whether anything about her experience would prevent her from being fair and impartial and that she did not know whether she could separate her "feelings as a victim," she *did not* clearly indicate that she would be unable to be fair and impartial based upon her experience. See Mosley v. State, 209 So. 3d 1248, 1265 (Fla. 2016), reh'g denied, SC14-2108, 2017 WL 510491 (Fla. Feb. 8, 2017) (finding that the defendant failed to show actual bias where a juror "answered that she was not sure how she would respond [to gruesome photographs] and that she did not know, although she thought she would try" to be fair or impartial); Lugo v. State, 2 So. 3d 1, 16 (Fla. 2008). Indeed, mere doubt concerning Ms. Cato's impartiality is insufficient to warrant relief.

Consequently, Claim 5 as to Ms. Cato is denied.

***Juror Amy Thomas***

First, Defendant argues that counsel rendered ineffective assistance by failing to properly question Ms. Thomas during jury selection and, subsequently, exclude Ms. Thomas as a juror for bias. Defendant alleges that Ms. Thomas's juror questionnaire listed her place of employment as Wyndham Vacation Rentals, which Defendant alleges was "near the crime-scene" and the location of the "helicopter/life-flight." Defendant states that counsel should have questioned Ms. Thomas "as to her workplace" and the "proximity to the crime-scene." Defendant states that counsel should have then excluded Ms. Thomas as a juror. Defendant alleges that although he "ratified" the jury selections, he did so because "of a lack of knowledge as to what the process of selection encompasses" and because he "was totally under the sway of defense counsel" and "was told to simply answer 'yes, sir.'" Defendant states that had he been properly advised about "juror biasness," he would not have agreed to select Ms. Thomas as a juror. Defendant alleges that Ms. Thomas was "inherently bias[ed]."

Second, Defendant argues that counsel rendered ineffective assistance by failing to question Ms. Thomas after she provided a note to the Court during the trial, failing to file a motion for mistrial based on Ms. Thomas's note, and failing to include Defendant at the side bench conversation concerning Ms. Thomas's note. Specifically, Defendant alleges that Ms. Thomas provided a note to the Court during th trial that stated that she worked at the location "where the helicopter landed," she remembered "others at work talking about it and saying it was related to a shooting involving drugs," and she remembered her "kids being concerned that the person accused of the shooting was a former neighbor, although it was not the same person." Defendant alleges that counsel showed him the note during the trial but that he was "not able to make out all of the words in the note" because it was "written in cursive." Defendant alleges that counsel told him to "keep quiet" and that "nothing could be done." Defendant states that Ms. Thomas wrote her note "while in the jury room" and had counsel questioned Ms. Thomas "to ascertain if she had discussed the contents of her note with the other jurors," he would have "discovered that she had in fact discussed her note with the other jurors." Defendant states that this "infected the integrity of the panel . . . ." Defendant alleges that

Page 18 of 42

had counsel filed a motion for mistrial, the Court would have granted the motion.

As to Defendant's claim that counsel failed to properly question Ms. Thomas during jury selection and, subsequently, exclude her for bias, he is not entitled to relief. It appears that Defendant's claim is legally insufficient. See Solorzano v. State, 25 So. 3d 19, 23 (Fla. 2d DCA 2009) ("A claim that counsel was ineffective for failing to 'follow-up' on questioning to establish grounds for a for-cause challenge has been held to be legally insufficient because such a claim can be based on nothing more than conjecture by the defendant."). However, even if the claim is legally sufficient and counsel had questioned Ms. Thomas and elicited the statements made in her note, Defendant has not shown that Ms. Thomas was *actually biased*. Indeed, Ms. Thomas stated in her note that although she worked at the location "where the helicopter landed," remembered "others at work talking about it and saying [it] was related to a shooting involving drugs," and remembered her "kids being concerned that the person accused of [the] shooting was a former neighbor, although it was not the same person," she stated, "I do not feel this will have any impact on my conclusion." See Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007) (agreeing with the lower court that the juror's "slight familiarity with the case did not rise to that level of actual bias necessary for postconviction relief"). To any extent Defendant claims that counsel should have excluded Ms. Thomas for bias before eliciting the statements made in her note, he is not entitled to relief.FN18

> FN18  Defendant affirmed that he was satisfied with the composition of the jury. Exhibit B, pages 68-69, 74, 90. Although Defendant appears to allege that he was not properly advised about "juror biasness," during jury selection, the Court stated that the object of jury selection is to obtain an impartial jury and explained peremptory and for-cause challenges. Exhibit B, pages 18-20. Further, Defendant affirmed that he understood that he had "some strikes" that were available and that he was waiving the use of "those strikes" if the jury remained the same. Exhibit B, pages 90-92. Accordingly, Defendant "cannot

Page 19 of 42

use the postconviction process to go behind" his representation to the Court that he was satisfied with the composition of his jury. <u>See</u> <u>Kelley v. State</u>, 109 So. 3d 811, 813 (Fla. 1st DCA 2013).

As to Defendant's claim that counsel failed to question Ms. Thomas after she provided a note to the Court during the trial and failed to file a motion for mistrial based on Ms. Thomas's note, his claim is facially insufficient because he fails to allege that counsel was aware or should have been aware that Ms. Thomas discussed the note with the other jurors, or that he told counsel that Ms. Thomas discussed the note with the other jurors. <u>See</u> <u>Nunez v. State</u>, 988 So. 2d 695, 698 (Fla. 2d DCA 2008). Defendant states that he "kept quiet" after reviewing Ms. Thomas's note, and the record shows that he had no objection. Although Defendant asserts that he was "not able to make out all of the words in the note" because it was "written in cursive," Defendant fails to allege which parts of the note that he did not understand or whether he advised counsel that he did not understand the substance of the note. Further, Defendant's allegation that Ms. Thomas wrote her note "while in the jury room" and that, had counsel questioned her, he would have "discovered that she had in fact discussed her note with the other jurors" is speculative. <u>See</u> <u>Kessell v. State</u>, 96 So. 3d 1031, 1033 (Fla. 4th DCA 2012) ("Postconviction relief cannot be based on speculative assertions."). Indeed, prior to the jury leaving the courtroom the last time before Ms. Thomas provided her note to the Court, the Court reminded the jury not to discuss the case among the other jurors. Nevertheless, even if Ms. Thomas had discussed the note among the other jurors, Defendant has not shown "that the possible jury taint reached down into the validity of the trial itself, to the extent that the verdict of guilty could not have been obtained without the comment," <u>Nunez v. State</u>, 988 So. 2d 695, 698 (Fla. 2d DCA 2008), or that the alleged error was so prejudicial as to vitiate the entire trial. <u>See</u> <u>Gosciminski v. State</u>, 132 So. 3d 678, 695-96 (Fla. 2013) ('The granting of a motion for mistrial is not based on whether the error is 'prejudicial.' Rather, the standard requires that a mistrial be granted only 'when an error is so prejudicial as to vitiate the entire trial . . . .'").

As to Defendant's claim that counsel failed to include Defendant at the side bench conversation concerning Ms. Thomas's note, Defendant is not entitled to relief because he fails to show how there is a reasonable probability that the outcome of the trial would have been different absent counsel's alleged error. Indeed, Defendant states that he "kept quiet" after reviewing Ms. Thomas's note, and the record shows that he had no objection. Although Defendant asserts that he was "not able to make out all of the words in the note" because it was "written in cursive," Defendant fails to allege which parts of the note that he did not understand or whether he advised counsel that he did not understand the substance of the note. Moreover, Defendant was present in the courtroom during the bench conference, and defense counsel consulted with Defendant immediately following the bench conference.FN24 See Fla. R. Crim. P. 3.180(b) ("A defendant is present for purposes of this rule if the defendant is physically in attendance for the courtroom proceeding, and has a meaningful opportunity to be heard through counsel on the issues being discussed.").

> FN24   Exhibit B, page 243; See CD-R Recording of October 28, 2014, Proceeding from 1:31 p.m. to 1:35 p.m., filed on June 5, 2018. A copy of the CD-R Recording is not attached to this Order, as it would be impossible for Defendant to receive a copy of that recording while incarcerated. See Fla. Admin. Code R. 33-210.102(6).

Although Defendant states that had the Court "denied questioning" of Ms. Thomas or denied the motion for mistrial, "these issues would have been preserved for direct appeal," a failure to preserve an issue for appeal does not establish the requisite prejudice. See Strobridge v. State, 1 So. 3d 1240, 1242-43 (Fla. 4th DCA 2009).

Consequently, Claim 5 as to Ms. Thomas is denied.

(Doc. 14-16, Ex. Q at 205-12) (footnotes citing trial transcript omitted). The state circuit court attached copies of relevant portions of the trial record.

The First DCA affirmed as follows:

Following a jury trial Appellant was convicted of first degree murder and attempted first degree murder. He was sentenced to life in prison for the murder and a consecutive 75 year sentence for the attempted murder. We affirmed his convictions and sentences on direct appeal in *Stacks v. State*, 177 So. 3d 255 (Fla. 1st DCA 2015).

Appellant now challenges the trial court's denial of postconviction relief on the sixteen grounds of ineffective assistance of counsel alleged in Appellant's amended motion under rule 3.850, Florida Rules of Criminal Procedure. The State responded to five of the claims, as directed by the trial court. The trial court's detailed order and attachments, including the established law the court relied upon, conclusively demonstrated that Appellant is not entitled to relief on any of the grounds alleged. Therefore, the trial court's order is AFFIRMED.

*Stacks*, 275 So. 3d at 1257 (copy at Doc. 14-18, Ex. S). The First DCA's affirmance is an "adjudication on the merits" of Stacks's claim, and, therefore, is entitled to deference under § 2254(d).

## B.    Stacks's Claim Does Not Warrant Habeas Relief

For context, the undersigned reviews jury selection principles under federal law and Florida law.

### 1.    *Jury Selection Principles*

"A criminal defendant has a right to an impartial jury, and a prospective juror who lacks impartiality must be excused for cause." *Fennell v. Sec'y, Fla. Dep't of Corr.*, 582 F. App'x 828, 832 (11th Cir. 2014) (citing *Ross v. Oklahoma*, 487 U.S. 81, 85-86 (1988)). A party seeking to exclude a prospective juror for cause "must demonstrate that the juror in question exhibited *actual bias* by showing either an

express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993) (emphasis added); *see also Smith v. Phillips*, 455 U.S. 209, 215 (1982). The party challenging the juror bears the burden of showing that the prospective juror has actual bias. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). The Supreme Court "has upheld a trial court's seating of a juror even where the juror gave conflicting or ambiguous answers during voir dire about his ability to be impartial." *Fennell*, 582 F. App'x at 832 (citing *Patton v. Yount*, 467 U.S. 1025, 1038-40 (1984); *Murphy v. Florida*, 421 U.S. 794, 801-03 (1975)).

Florida's test *at trial* for evaluating juror competency "is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984). If there is "any reasonable doubt" as to the juror's impartiality, the trial court must grant a cause challenge to a prospective juror.

Florida's test in a postconviction proceeding—when a defendant alleges that trial counsel "was ineffective for failing to raise or preserve a cause challenge"— requires the defendant to "demonstrate that a juror was *actually biased*." *Carratelli*, 961 So. 2d at 324 (emphasis added). The Eleventh Circuit has held that "*Carratelli*'s

actual bias test is arguably consistent with *Strickland*." *Owen v. Fla. Dep't of Corr.*,

686 F.3d 1181, 1201 (11th Cir. 2012). The court explained:

> To "show that there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been
> different," *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, [the
> defendant] must show that at least one juror was biased; if no juror were
> biased, then there is no "reasonable probability that . . . the result of the
> proceeding would have been different." *Id.*

*Id.*

### 2.    *A Fairminded Jurists Could Agree with the State Court's Conclusion that Stacks Failed to Satisfy the Strickland Standard*

The First DCA rejected Stacks's ineffective assistance claim on the same basis

as the state circuit court. In reviewing the state court's decision, this court gives the

state court's factual findings substantial deference because they are amply supported

by the state court record and because Stacks has not rebutted them by "clear and

convincing evidence." 28 U.S.C. § 2254(e)(1). Considering the record as a whole, a

fairminded jurist could agree with the state court's conclusion that Stacks failed to

establish deficient performance and prejudice under *Strickland*.

Stacks did not present any evidence, other than the transcript of voir dire, to

show that Cato was actually biased. The following excerpt provides Cato's

statements in their entirety and in context:

MS. MASON [Prosecutor]:  Have you been a victim of a crime?

PROSPECTIVE JUROR [Ms. Cato]:  Yes.

MS. MASON:  Was that here locally, ma'am?

PROSEPCTIVE JUROR:  Pensacola.

MS. MASON:  Anything about your experience as a victim prevent you from being fair and impartial in this case?

PROSPECTIVE JUROR:  It's hard to say because I was the victim. I don't know if I can separate my feelings as a victim. I'm being honest.

MS. MASON:  Were the facts in your case at all similar to the robbery homicide element here?

PROSPECTIVE JUROR:  My business was robbed when we—we were not there when it was.

MS. MASON:  Did you have to come to court, ma'am?

PROSPECTIVE JUROR:  They never caught them.

MS. MASON:  So sorry. Thank you for that, Ma'am. I appreciate it.

(Doc. 14-8, Ex. H at 45-46).

Cato did not make a clear declaration that she could not be impartial. Her statements about her feelings as a crime victim were ambiguous and did not show actual bias. The state court reasonably concluded that Cato's statements, alone, were insufficient to rebut the presumption that Stacks's defense counsel acted competently in not moving to strike Cato for cause. *Williams v. Allen*, 598 F.3d 778,

794 (11th Cir. 2010); *see also, e.g., Fennell*, 582 F. App'x at 832-34 (holding that defense counsel's failure to strike juror for alleged bias was not deficient performance—juror's response to counsel's question regarding his ability to set aside sympathy for the victim was ambiguous and did not indicate bias; juror did not respond when the entire panel was asked if they could not be impartial jurors because of sympathy; and there was no other indication that the juror was actually biased against the defendant). In addition, Stacks not only acquiesced in, but affirmatively approved counsel's decision to select Cato as a juror. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."); *see also, e.g., Price v. Sec'y, Dep't of Corr.*, 558 F. App'x 871, 872-73 (11th Cir. 2014) ("[I]t was not an unreasonable application of clearly established federal law for the Florida courts to conclude that Price could not argue that counsel had been ineffective for failing to strike a juror that Price had approved."). Under the totality of the circumstances, Stacks's trial counsel reasonably could have chosen not to strike Cato from the jury.

The state court also concluded, reasonably, that Stacks failed to satisfy *Strickland*'s prejudice prong. Because Stacks failed to show that Cato was actually biased against him, he correspondingly failed to show that there was a reasonable probability the outcome of his trial would have been different had Cato not served

on the jury. In that regard, the court notes that during voir dire and immediately prior to deliberations, the trial court instructed the jury that its verdict should be based on the evidence, that it should not be influenced by personal experience, and that it should not be based on feeling sorry for anyone, being angry at anyone, or feelings of bias or sympathy. (Doc. 14-8, Ex. H at 15-92 (Voir Dire Tr.); Doc. 14-7, Ex. G at 1034 (Jury Instr.)). "Jurors are presumed to follow the law as instructed by the trial court and to comply with their oaths." *Fennell*, 582 F. App'x at 834 (citing *Hallford v. Culliver*, 459 F.3d 1193, 1204 (11th Cir. 2006); *United States v. Khoury*, 901 F.2d 948, 955 (11th Cir.), *modified on other grounds*, 910 F.2d 713 (11th Cir. 1990)). Without any evidence that Cato was actually biased against Stacks, the state court reasonably presumed that Cato followed the trial judge's instructions, set aside any feelings based on her personal experience, and was fair and impartial during deliberations. The state court's rejection of Stacks's ineffective assistance claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard.

The same is true concerning counsel's failure to dismiss Juror Thomas. At the beginning of voir dire, the state trial court instructed the venire:

> If you have a doubt about whether to disclose something, you should make a disclosure and let the Judge or lawyers sort out whether it is important. . . . At any time after you answer a question there is no such thing as forever hold your peace in a trial. Even after giving an answer, if something someone else says jogs a memory or a more complete

> response, tell us about it. This is true any time up to the end of the case
> and beyond.

(Doc. 14-8, Ex. H at 19-20).

During a lunch break on the first day of trial, after Selfridge and others testified, Juror Thomas passed a note to a court security officer, who then notified the trial judge. (Doc. 14-9, Ex. I at 241-42). Outside the presence of the jury, counsel approached the bench, and the judge read the note to counsel. (*Id*. at 242). Thomas's note read:

> Employed by Wyndham Vacation Rentals and work at the location where the helicopter landed (parking lot of Sullivan & Mary Esther Blvd).
>
> Did not realize was related to incident. Remember others at work talking about it and saying was related to a shooting involving drugs. I do not feel this will have any impact on my conclusion.
>
> Also remember my kids being concerned that the person accused of shooting was a former neighbor although it was not the same person.

(*Id*. at 242-43; *see also* Doc. 14-7, Ex. G at 1037 (copy of note)). After hearing the contents of the note, defense counsel advised the judge: "As far as whether she should stay on, let me just talk to my client." (Doc. 14-9, Ex. I at 243). Defense counsel brought the note to Stacks, conferred with Stacks, and informed the court: "We have no challenge." (*Id*.).

Stacks's ineffective assistance claim relies exclusively on Thomas's note to establish that Thomas was biased. The state court reasonably determined that Thomas's statements in the note did not show that she was actually biased against Stacks. To the contrary, Thomas stated that the circumstances she identified would not affect her verdict. In addition, Stacks himself decided, after reading Thomas's note, to keep her on the jury. Accordingly, a fairminded jurist could agree with the state court's conclusion that Stacks failed to rebut the presumption that trial counsel handled the issue competently, and that Stacks also failed to establish a reasonable probability the result of his trial would have been different had counsel challenged Thomas for bias. See *e, e.g., Fennell*, 582 F. App'x at 832-34 ; *Price*, 558 F. App'x at 872-73. The state court's rejection of Stacks's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.

For the foregoing reasons, Stacks is not entitled to habeas relief on Ground One.

**Ground Two**      **"Confusing/Misleading Jury Instructions; Counsel Violated Due Process Rights by Not Objecting." (Doc. 1 at 7).**

**Ground Four**      **"Petitioner Convicted of Uncharged Crime, Counsel Violated Petitioner's Due Process Rights by Not Objecting." (Doc. 1 at 10).**

These two claims are interrelated and will be discussed together. In Ground Two, Stacks claims that trial counsel was ineffective for failing to object to "several

confusing/misleading, erroneous and conflicting instruction[s] to the jury at trial when instructing on the uncharged manner of the crime." (Doc. 1 at 7). In Ground Four, Stacks claims that trial counsel was ineffective for failing to challenge his convictions on this basis: "The State used a set of facts 'under oath' to garner an indictment, then convicted the Petitioner using a different set of facts 'under oath.' The grand jury indictment was amended to convict the Petitioner of a broader charge." (*Id*. at 10).

Both claims arise from the fact that the indictment (1) included an allegation that Stacks murdered Robinson by shooting him "in the chest;" and (2) stated the charge for the attempted murder of Selfridge as "Attempted Felony Murder with a Weapon" instead of "Attempted First Degree Felony Murder with a Weapon." (*See* Doc. 14-1, Ex. A at 7-8 (Indictment)).

The parties agree that Stacks exhausted these ineffective assistance claims by presenting them to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 7-8, 10-11; Doc. 11 at 32, 40). The State asserts that Stacks is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. (*Id*. at 32-36, 41-44).

## A.    State Court's Decision

Stacks presented Ground Two of his petition to the state courts as "Claim 13" of his amended Rule 3.850 motion. (Doc. 14-16, Ex. Q at 41-42). Stacks presented

Ground Four of his petition to the state courts as "Claim 12" of his amended Rule

3.850 motion. (*Id.* at 36-40). The state circuit court identified *Strickland* as the

controlling legal standard, (Doc. 14-16, Ex. Q at 199-200), and denied relief for these

reasons:

## <u>Claim 12: Ineffective Assistance Regarding Charges Listed in the Indictment</u>

       Defendant argues that counsel rendered ineffective assistance for failing to object, move for a judgment of acquittal, or move for a directed verdict based on him having been "convicted of [an] uncharged crime." As to count one, Defendant states that he was charged with committing first-degree premeditated or felony murder by shooting Mr. Robinson "in the chest" and that the jury found him guilty of that count as charged. Defendant alleges that the jury did not hear "any evidence" that Mr. Robinson died from a gunshot wound to the chest, but rather, the jury heard evidence that Mr. Robinson died from a gunshot wound to "the head." As to count two, Defendant states that he was charged with committing "attempted felony murder with a weapon" but that the jury found him guilty of "attempted first degree felony murder as charged." Defendant states that counsel agreed to add "first degree" to count two on the verdict form during a discussion at the bench but that the grand jury did not return an indictment against him for attempted *first degree* felony murder. Further, Defendant states that he "raises too the violation of rule 3.180, regarding him not being at the bench to hear these discussions." Defendant states that absent counsel's alleged errors, "the outcome would be [an] acquittal, [a] directed verdict, or [a] new trial."

       "Each count of an indictment or information on which the defendant is to be tried shall allege *the essential facts* constituting the offense charged." Fla. R. Crim. P. 3.140(d)(1) (emphasis added). Rule 3.140(o) provides,

> No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

"An unnecessary allegation may be disregarded as surplusage and, on motion of the defendant, may be stricken from the pleading by the court." Fla. R. Crim. P. 3.140(i). "For an offense divided into degrees it is sufficient to charge the commission of the offense without specifying the degree." Fla. R. Crim. P. 3.140(k)(6).

As to count one, Defendant is not entitled to relief. Count one of the indictment alleges the essential facts constituting the offense charged, "first-degree premeditated and/or felony murder." Indeed, the indictment charges Defendant with killing and murdering Mr. Robinson unlawfully from a premeditated design to effect the death of a human being or while engaged in the perpetration of or an attempt to perpetrate armed robbery by shooting Mr. Robinson. See § 782.04(1), Fla. Stat. (2013). The particular manner by which Defendant killed Mr. Robinson (i.e., by shooting him in the head versus the chest) is not an essential element of the offense. See Ingleton v. State, 700 So. 2d 735, 740 (Fla. 5th DCA 1997) ("Although some manner must be shown in order to prove the element of causation itself, the particular manner by which Ingleton allegedly killed Prior was not an essential element of the offense."); D.R. v. State, 790 So. 2d 1242, 1246 (Fla. 5th DCA 2001) (stating that "the manner of killing is not an essential element of the offense" of murder). Further, Defendant does not allege that the indictment, charging him with shooting Mr. Robinson "in the chest," mislead [sic] or embarrassed him in preparing a defense or exposed him to a substantial danger of a new prosecution for the same offense.

As to count two, Defendant is not entitled to relief. Count two of the indictment alleges the essential facts constituting the offense charged, "attempted felony murder with a weapon." Indeed, the indictment charges Defendant with attempting to kill and murder Mr. Selfridge while Defendant was engaged in the perpetration of or the attempt to perpetrate armed robbery, and in the course of committing armed robbery, carried a firearm. See §§ 782.051, 775.087, Fla. Stat. (2013). Although the indictment does not specifically allege the degree of attempted felony murder charged, the substance of the facts constituting the crime charged in the indictment indicates that Defendant was charged with first-degree attempted felony murder. See § 782.051, Fla. Stat. (2013). As stated above, an indictment need not specify the degree of the crime charged. See Fla. R. Crim. P. 3.140(k)(6). As to Defendant's assertion that he was not present at the bench discussion concerning the addition of the words "first degree" to count two on the verdict form, he is not entitled to relief. See Fla. R. Crim. P. 3.180(b); Howard v. State, 484 So. 2d 1319, 1320-21 (Fla. 3d DCA 1986). Further, Defendant does not allege that the indictment, not specifying the degree of count two, mislead [sic] or embarrassed him in preparing a defense or exposed him to a substantial danger of a new prosecution for the same offense.

Consequently, Claim 12 is denied.

## Claim 13: Ineffective Assistance Regarding Jury Instructions

Defendant argues that counsel rendered ineffective assistance for failing to object to "confusing, misleading, conflicting and erroneous" jury instructions. Specifically, Defendant alleges that it was error for the Court to instruct the jury (1) that he could be found guilty as charged on count one "when that was impossible" because the indictment alleged that he killed Mr. Robinson by shooting him in the chest rather than "in the head," (2) that he could be found guilty as charged on count two when the indictment charged him with committing "attempted felony murder with a weapon" rather than "attempted first degree felony murder," and (3) that he was charged on count two with "attempted felony murder with a weapon," "attempted first degree felony murder," and "attempted first degree felony murder with a

weapon." Defendant alleges that absent counsel's alleged deficiency, "the outcome would have been favorable to the defense."

Although Defendant alleges that "the outcome would have been favorable to the defense" absent counsel's alleged deficiency, he fails to allege specific facts showing a reasonable probability that, absent counsel's alleged errors, the result of the proceeding would have been different. Further, the primary basis of Defendant's claim is that the indictment alleged that he shot Mr. Robinson "in the chest" but that the jury heard evidence that Mr. Robinson died from a gunshot wound to "the head," and that he was charged with committing "attempted felony murder with a weapon" but that the jury found him guilty of "attempted first degree felony murder as charged." For the reasons stated in Claim 12, Defendant is not entitled to relief. As to Defendant's allegations that counsel's alleged errors "served to waive these issues from review on direct appeal," a failure to preserve an issue for appeal does not establish the requisite prejudice. See Strobridge v. State, 1 So. 3d 1240, 1242-43 (Fla. 4th DCA 2009). Consequently, Claim 13 is denied.

(Doc. 14-16, Ex. Q at 224-28) (footnotes omitted).

The First DCA affirmed, explaining in relevant part: "The trial court's detailed order and attachments, including the established law the court relied upon, conclusively demonstrated that Appellant is not entitled to relief on any of the grounds alleged." (Doc. 14-18, Ex. S). The First DCA's affirmance is an "adjudication on the merits" of Stacks's claims, and, therefore, is entitled to deference under § 2254(d).

Page 34 of 42

**B.    Stacks's Claims Do Not Warrant Habeas Relief**

The state court reasonably determined that trial counsel was not ineffective for failing to raise Stacks's proposed arguments because they lacked merit and would not have provided Stacks any relief.

As the state court explained, there was no material or prejudicial variance between the indictment and either the State's evidence, the jury instructions, or the verdict. They all were consistent on the essential elements necessary to convict Stacks of First-Degree Premeditated and/or Felony Murder. The fact that the body of the indictment included an unnecessary allegation concerning the entry point of the fatal shot to Robinson was not a viable basis to object to the jury instructions or to argue that Stacks was tried and convicted for an uncharged crime. *See* Fla. R. Crim. P. 3.140; *Ingleton,* 700 So. 2d at 740; *D.R.*, 790 So. 2d at 1246; *see also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). Thus, although due process prohibits an individual from being convicted for an uncharged crime, *see Cole v. Arkansas*, 333 U.S. 196, 201 (1948), Stacks was convicted for the crime with which he was charged in Count 1.

Similarly, the fact that the caption of the indictment stated Count 2 as "Attempted Felony Murder with a Weapon" without indicating that it was a first-degree felony, was not a basis for objecting to the jury instructions or arguing that Stacks was convicted for an uncharged crime. Florida law did not require the indictment to specify the degree of the offense. Fla. R. Crim. P. 3.140; *see also Herring*, 397 F.3d at 1355. Further, even *if* Florida or federal law required specification of the degree of the offense, the body of the indictment did just that. The indictment cited the relevant statute, § 782.051, Fla. Stat., which identifies the crime as a first-degree felony. (Doc. 14-1, Ex. A at 8). The body of the indictment also identified the charge, in bold, as: "**F-1PBL-L9**."  (*Id*.).

Counsel is not ineffective for failing to preserve or argue a meritless claim. *Chandler v. Moore*, 240 F.3d 907, 917 (11th  Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Meders v. Warden, Georgia Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019); ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained."); *Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that the petitioner could not possibly have suffered *Strickland* prejudice where the objection that was not made would have been futile); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently

for failing to perform a futile act, one that would not have gotten his client any relief.").

The state court's rejection of Stacks's claims was neither contrary to, nor involved an unreasonable application of, the *Strickland* standard. Stacks is not entitled to habeas relief on Ground Two or Ground Four.

**Ground Three**   **"Failure to Hire Investigator to Investigate Witnesses and Take Photographs of the Scene of the Crime." (Doc. 1 at 8).**

Stacks claims that trial counsel was ineffective for not hiring an investigator to "take pictures of the witnesses [sic] viewpoint, which would have showed that the view was actually obstructed and would've been impossible for the witness to make eye contact with the Petitioner." (Doc. 1 at 8). The "witness" to whom Stacks refers is Mr. Ellery. Ellery witnessed the shooting, saw Stacks and Rumlin remove their face coverings, and identified Stacks as the shooter at trial. (*See* Doc. 14-9, Ex. I at 290-306 (Trial Tr.—Ellery Test.)).

The parties agree that Stacks exhausted this ineffective assistance claim by presenting it to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 9; Doc. 11 at 36-37). The State asserts that Stacks is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. (*Id*. at 37-40).

A.    **State Court's Decision**

Stacks presented this claim to the state courts as "Claim 11" of his amended Rule 3.850 motion. (Doc. 14-16, Ex. Q at 33-35). The state circuit court identified *Strickland* as the controlling legal standard, (Doc. 14-16, Ex. Q at 199-200), and denied relief for the following reasons:

**Claim 11: Ineffective Assistance Regarding Hiring an Investigator**

Defendant argues that counsel rendered ineffective assistance for failing to hire an investigator "to investigate witnesses and to take photographs of the scene of the crime." As to the investigation of witnesses, Defendant alleges that an investigator "could also have done criminal background checks" on all of the witnesses and "would have assisted in impeaching" Mr. Selfridge and "likely other witnesses as well." As to photographs of the location of the crime, Defendant alleges that defense counsel took a photograph of the location where the crime occurred but that the photograph was not admitted into evidence because the Court found that "it's a Richardson violation." Defendant alleges that Mr. Ellery testified that he was "20 to 30 feet away" from the scene of the crime but that the photograph would have shown that Mr. Ellery "couldn't see what [he] claimed he saw" because "the distance shown in his photo was very different than what [Mr.] Ellery said." Defendant states that counsel's failure to hire an investigator "resulted in his guilty verdicts."

As to Defendant's claim concerning the investigation of witnesses, his claim is facially insufficient at least for the reasons that he fails to state what would have been discovered had criminal background checks been conducted on the witnesses in this case and how the investigator could have assisted in impeaching the witnesses in this case.

As to Defendant's claim concerning photographs of the location of the crime, his claim is facially insufficient at least for the reason that

he does not specifically allege what a photograph taken by the investigator would have shown. For the sake of argument, the Court assumes that Defendant argues that the photograph would have shown that Mr. Ellery "couldn't see what [he] claimed he saw" because "the distance shown in his photo was very different than what [Mr.] Ellery said." At the bench discussion concerning the photograph taken by defense counsel, defense counsel stated that he wanted to admit the photograph into evidence because it showed that Mr. Ellery's distance from the scene of the crime "was farther away" than 20 to 30 feet. Although the photograph was not admitted into evidence, defense counsel elicited testimony from Mr. Ellery on cross examination that the distance was "a little bit more" than "20 or 30 feet."

"Trial counsel is not absolutely required to hire an investigator under all circumstances." Davis v. State, 928 So. 2d 1089, 1117 (Fla. 2005). However, the Court finds that even if counsel had been deficient for failing to hire an investigator, there is not a reasonable probability that the result of the proceeding would have been different based on the evidence presented at trial, including the testimonies of Ms. Johnson, Ms. Morgan, Detective Hart, Ms. Clark, Doctor Slevinski, and Doctor Minyard, as detailed in Claim 8. As to Defendant's allegation that counsel's alleged errors "caused these issues to be waived from appellate review on direct appeal," a failure to preserve an issue for appeal does not establish the requisite prejudice. See Strobridge v. State, 1 So. 3d 1240, 1242-43 (Fla. 4th DCA 2009).

Consequently, Claim 11 is denied.

(Doc. 14-16, Ex. Q at 223-24). The state circuit court summarized the testimonial evidence against Stacks in rejecting Stacks's "Claim 8." (Id. at 217-20).

The First DCA affirmed the denial of relief, relying on the circuit court's reasoning. (Doc. 14-18, Ex. S). The First DCA's affirmance is an "adjudication on the merits" of Stacks's claim, and, therefore, is entitled to deference under § 2254(d).

### B.    Stacks's Claim Does Not Warrant Habeas Relief

A fairminded jurist could agree with the state court's conclusion that Stacks failed to show that there was a reasonable probability the result of his trial would have been different had counsel hired an investigator to take pictures of Ellery's "viewpoint." The jury was presented with ample evidence—not just testimony, but also maps and surveillance video—depicting the location of the shooting, the shell casings, Ellery's location, and Stacks's location when Ellery saw his face. In addition, defense counsel cross-examined Ellery on his ability to see Stacks's face from Ellery's location. (Doc. 14-8, Ex. H – Doc. 14-10, Ex. J (Trial Tr.)).

The state court's decision finding no prejudice is well within the reasonable bounds of *Strickland*. *See, e.g., Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("[A] petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial."). Stacks is not entitled to habeas relief on Ground Three.

### IV.  CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.  CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Keenan Randall Stacks*, Okaloosa County Circuit Court Case No. 2013-CF-1485, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Pensacola, Florida, this <u>14th</u> day of April, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**